KAREN P. HEWITT
United States Attorney
STEVE MILLER
Assistant U.S. Attorney
California State Bar No. 138020
United States Courthouse
940 Front Street, Room 5152
San Diego, California  92189-0150
Telephone: (619) 557-5432
email: steve.miller2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07cr2981-LAB |
| | ) | |
| Plaintiff, | ) | DATE: December 10, 2007 |
| | ) | TIME: 10:30 a.m. |
| v. | ) | |
| | ) | GOVERNMENT'S RESPONSE AND |
| RANDY JOE DELACRUZ, | ) | OPPOSITION TO DEFENDANTS' |
| | ) | MOTIONS TO: |
| Defendant. | ) | |
| | ) | (1)  DISMISS INDICTMENT |
| | ) | (2)  DISMISS INDICTMENT DUE TO |
| | ) |       MISINSTRUCTIONS OF THE |
| | ) |       GRAND JURY; |
| | ) | (3)  LEAVE TO FILE FURTHER |
| | ) |       MOTIONS |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF FACTS |
| | ) | AND MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES AND GOVERNMENT'S |
| | ) | MOTIONS FOR RECIPROCAL DISCOVERY |
| | ) | |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through

its counsel, Karen P. Hewitt, United States Attorney, and Steve

Miller, Assistant United States Attorney, and hereby files its

response and opposition to defendants' above-referenced motions. Said

response is based upon the files and records of this case, together

with the attached statement of facts, memorandum of points and

authorities.

1

I

2

STATEMENT OF FACTS

3    In 1984, defendant RANDY JOE DELACRUZ was a private in the United

4  States Army serving in Germany.   On October 6, 1984, the defendant

5  went AWOL (absent without leave) and returned to his unit on

6  November 4, 1984.   On November 9, 1984, defendant went AWOL again.

7  The next day,  on the 10th, defendant strangled his wife, Karin

8  Delacruz, to death.

9    Defendant was apprehended by German police on November 11.   On

10  November 12, defendant threw hot coffee in the face of a police

11  officer and hit him over the head with a chair.

12    Defendant was court martialed, tried in New York and found guilty

13  of the murder, assault and being absent without leave.   On February

14  13, 1985, defendant was dishonorably discharged and sentenced to life

15  in prison.

16    On January 12, 2006, defendant was transferred from FCI Sheridan

17  to a Community Corrections Center in San Diego.   On June 2, 2006,

18  defendant left Correctional Alternatives to pick up his paycheck and

19  never returned.

20    On November 4, 2006, defendant was arrested by the police in

21  Monroe County, Iowa, when he strangled and digitally raped a

22  womanmuebles" (furniture).   The agent asked defendant if he could

23  search the cargo area and defendant agreed to let the agent search.

24  The bay door was not locked.   When the agent opened the cargo door,

25  he smelled marijuana.

26  ///

27  ///

28  ///

II

POINTS AND AUTHORITIES

A.    THE GOVERNMENT HAS AND WILL CONTINUE TO COMPLY WITH
      RULE 16 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The Government has provided thirty-seven pages of voluntary discovery. Government will continue to provide voluntary discovery when it becomes available and will comply with Rule 16 and its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and 18 U.S.C. § 3500.

The Government gives specific notice of its intent to offer evidence of other acts under Rule 404(b). By this notice, the Government reserves the right to offer any evidence, of any act, that was performed by the defendant, that is referenced in any of the discovery. These acts include, but are not limited to, defendant's murder of his wife, assault on a police officer and the sexual assault of a woman in Iowa. The Government also reserves the right to offer defendant's convictions of these crimes to impeach any testimony should defendant elect to testify.

B.    FAILURE TO RETURN TO A COMMUNITY
      CORRECTIONS CENTER VIOLATES
      18 U.S.C. §§ 751(a) AND 4082(a)

Defendant argues that the Indictment should be dismissed because he was not in "custodial confinement" as required under 18 U.S.C. § 751. Essentially, defendant claims that once he was transferred from the custody of the FCI Sheridan to the CCC, he was immediately put on supervised release and was no longer "in the custody of the Attorney General." Defendant asserts that it is legally impossible to be released from a prison facility and still be in "custody" when transferred to a community corrections center.

Title 18, United States Code, Section 751(a) states:

(a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

Title 18, United States Code, Section 4082(a) states:

(a) The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title.[2]

Title 18, United States Code, Section 4082(c) states:

(c) As used in this section-

the term "facility" shall include a residential community treatment center. . .

"A federal prisoner participating in a pre-release or half-way house program by designation of the Attorney General commits an escape when he wilfully violates the terms of his extended confinement." United States v. Jones, 569 F.2d 499, 500 (9th Cir. 1978). Therefore, defendant's failure to return to Correctional Alternatives qualifies as an escape because it is a failure to remain within the extended

_____

[2]    Title 18, United States Code, Section 751, is in Chapter 35 of Title 18.

07cr2981-LAB

1    limits of his confinement, and a failure to return within the time

2    prescribed to the facility.

3        However, defendant appears to argue that his release from the FCI

4    was a release from "imprisonment" or "custody" that immediately began

5    his term of supervised release or parole.  Defendant cites 18 U.S.C.

6    § 3624(e) for the proposition that "(t)he term of supervised release

7    commences on the day the person is released from imprisonment."  Since

8    he was released from the "prison," any incarceration that is not

9    "prison" would not be "imprisonment."  The full text of § 3624(e)

10   states:

11           (e)  Supervision After Release.--A prisoner whose
         sentence includes a term of supervised release after
12       imprisonment shall be released by the Bureau of Prisons to
         the supervision of a probation officer who shall, during
13       the term imposed, supervise the person released to the
         degree warranted by the conditions specified by the
14       sentencing court.  The term of supervised release commences
         on the day the person is released from imprisonment and
15       runs concurrently with any Federal, State, or local term of
         probation or supervised release or parole for another
16       offense to which the person is subject or becomes subject
         during the term of supervised release.  A term of
17       supervised release does not run during any period in which
         the person is imprisoned in connection with a conviction
18       for a Federal, State, or local crime unless the
         imprisonment is for a period of less than 30 consecutive
19       days.  No prisoner shall be released on supervision unless
         such prisoner agrees to adhere to an installment schedule,
20       not to exceed two years except in special circumstances, to
         pay for any fine imposed for the offense committed by such
21       prisoner.

22       The flaw in defendant's argument is that § 3624(e) does not mean

23   that release from any imprisonment triggers the start of the term of

24   supervised release.  Subsection 3624(e) must be viewed within the

25   context of the balance of § 3624.  Particularly, subsection 3624(c)

26   establishes that a transfer to a community corrections center is still

27   a form of imprisonment prior to a prisoner's release from the Bureau

28   of Prisons:

5

(c) Pre-release Custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement.  The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

Id.

Subsection (c) requires the Bureau of Prisons to afford inmates an opportunity to serve a portion of their custodial sentence in a community corrections center, or similar facility, in order to assist the prisoner in re-integrating back into society.  The last ten percent of a prisoner's custodial sentence is deemed "pre-release custody" that qualifies as a continuation of the original imprisonment from which one may escape.

Therefore, when read within the context of the entire § 3624, defendant was still serving his custodial sentence when he was transferred to Correctional Alternatives because that was "pre-release custody."  He was not on supervised release or parole at the time he failed to remain within the extended limits of his confinement, or to return on time to the facility.  Therefore, defendant's motion to dismiss should be denied because 18 U.S.C. § 751 prohibits escapes from CCCs.

C.  THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED

1.  Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007.  Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th

6

07cr2981-LAB

Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing <u>United States v. Williams</u>, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). [<u>Id.</u>] <u>Isgro</u> reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. Concerning that kind of a contention <u>Isgro</u> stated:

1
2
3
4
5
6
7

> [A] court may dismiss an indictment if it perceives
> constitutional error that interferes with the grand jury's
> independence and the integrity of the grand jury
> proceeding. "Constitutional error is found where the
> 'structural protections of the grand jury have been so
> compromised as to render the proceedings fundamentally
> unfair, allowing the presumption of prejudice' to the
> defendant." Constitutional error may also be found "if
> [the] defendant can show a history of prosecutorial
> misconduct that is so systematic and pervasive that it
> affects the fundamental fairness of the proceeding or if
> the independence of the grand jury is substantially
> infringed."

8  974 F.2d at 1094 (citation omitted).[3/]

9      The portions of the two relevant instructions approved in

10  Navarro-Vargas were:

11
12
13

> You cannot judge the wisdom of the criminal laws
> enacted by Congress, that is, whether or not there should
> or should not be a federal law designating certain activity
> as criminal. That is to be determined by Congress and not
> by you.

14  408 F.3d at 1187, 1202.

15
16
17
18
19

> The United States Attorney and his Assistant United
> States Attorneys will provide you with important service in
> helping you to find your way when confronted with complex
> legal problems. It is entirely proper that you should
> receive this assistance. If past experience is any
> indication of what to expect in the future, then you can
> expect candor, honesty, and good faith in matters presented
> by the government attorneys.

20  408 F.3d at 1187, 1206.

21      Concerning the "wisdom of the criminal laws" instruction, the

22  court stated it was constitutional because, among other things, "[i]f

23  a grand jury can sit in judgment of wisdom of the policy behind a law,

24  then the power to return a no bill in such cases is the clearest form

25
26
27
28

[3/]    In Isgro the defendants choose the abrogation of
constitutional rights route when asserting that prosecutors have a
duty to present exculpatory evidence to grand juries. They did not
prevail. 974 F.2d at 1096 ("we find that there was no abrogation of
constitutional rights sufficient to support the dismissal of the
indictment." (relying on Williams)).

1   of 'jury nullification.'"[4/]   408 F.3d at 1203 (footnote omitted).

2   "Furthermore, the grand jury has few tools for informing itself of the

3   policy or legal justification for the law;  it receives no briefs or

4   arguments from the parties.   The grand jury has little but its own

5   visceral reaction on which to judge the 'wisdom of the law.'"  Id.

6        Concerning the "United States Attorney and his Assistant United

7   States Attorneys" instruction, the court stated:

8          We also reject this final contention and hold that
           although this passage may include unnecessary language, it
9          does not violate the Constitution.  The "candor, honesty,
           and good faith" language, when read in the context of the
10         instructions  as  a  whole,  does  not  violate  the
           constitutional relationship between the prosecutor and
11         grand jury. . . .  The instructions balance the praise for
           the government's attorney by informing the grand jurors
12         that some have criticized the grand jury as a "mere rubber
           stamp" to the prosecution and reminding them that the grand
13         jury is "independent of the United States Attorney[.]"

14  408 F.3d at 1207.  Id.  "The phrase is not vouching for the

15  prosecutor, but is closer to advising the grand jury of the

16  presumption of regularity and good faith that the branches of

17  government ordinarily afford each other."  Id.

18         2.  The Expanded "Wisdom of the Criminal Laws"
               Instruction Was Proper
19

20       Concerning whether the new grand jurors should concern themselves

21  with the wisdom of the criminal laws enacted by Congress, Judge Burns'

22  full instruction stated:

23         You understood from the questions and answers that a couple
           of people were excused, I think three in this case, because
24

25  ─────────────────

26       [4/]    The Court acknowledged that as a matter of fact jury
    nullification does take place, and there is no way to control it.  "We
27  recognize and do not discount that some grand jurors might in fact
    vote to return a no bill because they regard the law as unwise at best
28  or even unconstitutional.  For all the reasons we have discussed,
    there is no post hoc remedy for that;  the grand jury's motives are
    not open to examination."  408 F.3d at 1204 (emphasis in original).

they could not adhere to the principle that I'm about to tell you.

But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.  That's a judgment that congress makes.

And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."  Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.

Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by Congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity [as] criminal is not up to you.'"  Defendant notes, however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of even though the evidence may be insufficient.'"  Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution."  Defendant further contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to an instance in the grand juror selection process in which he excused three potential jurors," which resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but

10

his] enforc[ing] that view on pain of being excused from service as a grand juror."

In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. Defendant contends, "the instruction flatly bars the grand jury from declining to indict because they disagree with a proposed prosecution." This argument mixes-up two of the holdings in <u>Navarro-Vargas</u> in the hope they will blend into one. They do not.

<u>Navarro-Vargas</u> does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the term "should" was

germane.[5/]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is

Found").  This other instruction bestows discretion on the grand jury

not to indict.[6/]   In finding this instruction constitutional, the

court stated in words that ring true here, "It is the grand jury's

position in the constitutional scheme that gives it its independence,

not any instructions that a court might offer."  408 F.3d at 1206.

The other instruction was also given by Judge Burns in his own fashion

as follows:

> The function of the grand jury, in federal court at
> least, is to determine probable cause.  That's the simple
> formulation that I mentioned to a number of you during the
> jury selection process.  Probable cause is just an analysis
> of whether a crime was committed and there's a reasonable
> basis to believe that and whether a certain person is
> associated with the commission of that crime, committed it
> or helped commit it.

--------

[5/]    That instruction is not at issue here.  It read as follows:

> [Y]our task is to determine whether the government's
> evidence as presented to you is sufficient to cause you to
> conclude that there is probable cause to believe that the
> accused is guilty of the offense charged.   To put it
> another way, you should vote to indict where the evidence
> presented to you is sufficiently strong to warrant a
> reasonable person's believing that the accused is probably
> guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[6/]    The court upheld the instruction stating:

> This instruction does not violate the grand jury's
> independence.   The language of the model charge does not
> state that the jury "must" or "shall" indict, but merely
> that it "should" indict if it finds probable cause.   As a
> matter of pure semantics, it does not "eliminate discretion
> on the part of the grand jurors," leaving room for the
> grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci,
299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)).  "In this respect,
the grand jury has even greater powers of nonprosecution than the
executive because there is, literally, no check on a grand jury's
decision not to return an indictment.  408 F.3d at 1206.

07cr2981-LAB

> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.

> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per <u>Navarro-Vargas</u>, they were also told by Judge Burns they had the discretion not to return an indictment per <u>Navarro-Vargas</u>. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. <u>See</u> <u>Merced v. McGrath</u>, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." <u>Isgro</u>, 974 F.2d at 1094.

3.    The Addition to the "United States Attorney
      and his Assistant United States Attorneys"
      <u>Instruction Did Not Violate the Constitution</u>

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
>         . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries.  They generally work together.

Partial Transcript p. 12.

>         Now, again, this emphasizes the difference between the function of the grand jury and the trial jury.  You're all about probable cause.  If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well.  As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[7]

> As a practical matter, you will work closely with government lawyers.  The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters.  It's entirely proper that you should receive the assistance from the government lawyers.

---

[7]    Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

07cr2981-LAB

1   But at the end of the day, the decision about whether
    a case goes forward and an indictment should be returned is
2   yours and yours alone.    If past experience is any
    indication of what to expect in the future, then you can
3   expect that the U.S. Attorneys that will appear in front of
    you will be candid, they'll be honest, that they'll act in
4   good faith in all matters presented to you.

5   Partial Transcript pp. 26-27.

6       Commenting on the phrase, "the U.S. Attorneys are duty-bound to

7   present evidence that cuts against what they may be asking you to do

8   if they're aware of that evidence," Defendant proposes that by making

9   that statement, "Judge Burns also assured the grand jurors that

10  prosecutors would present to them evidence that tended to undercut

11  probable cause."    Defendant then ties this statement to the later

12  instruction which "advis[ed] the grand jurors that they 'can expect

13  that the U.S. Attorneys that will appear in front of [them] will be

14  candid, they'll be honest, and . . . they'll act in good faith in all

15  matters presented to you.'"    From this lash-up Defendant contends:

16      These instructions create a presumption that, in cases
        where the prosecutor does not present exculpatory evidence,
17      no exculpatory evidence exists. A grand juror's reasoning,
        in a case in which no exculpatory evidence was presented,
18      would proceed along these lines:

19      (1) I have to consider evidence that undercuts probable
20  cause.

21      (2) The candid, honest, duty-bound prosecutor
        would, in good faith, have presented any such
22      evidence to me, if it existed.

23      (3) Because no such evidence was presented to me,
        I may conclude that there is none. Even if some
24      exculpatory evidence were presented, a grand
        juror would necessarily presume that the evidence
25      presented represents the universe of all
        available exculpatory evidence; if there was
26      more, the duty-bound prosecutor would have
        presented it.

27      The instructions therefore discourage investigation--
        if exculpatory evidence were out there, the prosecutor
28      would present it, so investigation is a waste of time and
        provide additional support to every probable cause

15                                      07cr2981-LAB

1

2          determination: i.e., this case may be week [sic], but I
          know that there is nothing on the other side of the
          equation because it was not presented.  A grand jury so
3          badly misguided is no grand jury at all under the Fifth
          Amendment.

4   [Memorandum p.26.]   (Emphasis added.)[8/]

5          Frankly, Judge Burns' statement that "the U.S. Attorneys are

6   duty-bound to present evidence that cuts against what they may be

7   asking you to do if they're aware of that evidence," is directly

8   contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992)

9   ("If the grand jury has no obligation to consider all '<u>substantial</u>

10   exculpatory' evidence, we do not understand how the prosecutor can be

11   said to have a binding obligation to present it."[9/]    (emphasis

12   added)).   <u>See also</u>, <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th

13   Cir. 2000) ("Finally, their challenge to the government's failure to

14   ──────────────

15       [8/]    The term "presumption" is too strong a word in this setting.
     The term "inference" is more appropriate.  <u>See</u> <u>McClean v. Moran</u>, 963
16   F.2d 1306 (9th Cir. 1992) which states there are (1) permissive
     inferences; (2) mandatory rebuttable presumptions; and (3) mandatory
17   conclusive presumptions, and explains the difference between the
     three.  963 F.2d at 1308-09 (discussing <u>Francis v. Franklin</u>, 471 U.S.
18   314 (1985); <u>Sandstrom v. Montana</u>, 442 U.S. 510 (1979); and <u>Ulster
     County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)).  <u>See also</u>
19   <u>United States v. Warren</u>, 25 F.3d 890, 897 (9th Cir. 1994).

20       [9/]    Note that in <u>Williams</u> the Court established:

21          Respondent does not contend that the Fifth Amendment itself
          obliges the prosecutor to disclose substantial exculpatory
22          evidence in his possession to the grand jury.    Instead,
          building on our statement that the federal courts "may,
23          within limits, formulate procedural rules not specifically
          required by the Constitution or the Congress," he argues
          that imposition of the Tenth Circuit's disclosure rule is
24          supported by the courts' "supervisory power."

25   504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude
     that courts have no authority to prescribe such a duty [to present
26   exculpatory evidence] pursuant to their inherent supervisory authority
     over their own proceedings."  504 U.S. at 55.  <u>See also</u>, <u>United States
27   v. Haynes</u>, 216 F.3d 789, 797-98 (9th Cir.  2000).  However, the Ninth
     Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the supervisory powers
28   would not be invoked to ward off an attack on grand jury procedures
     couched in constitutional terms.  974 F.2d at 1096.

1  introduce evidence impugning Fairbanks's credibility lacks merit

2  because prosecutors have no obligation to disclose 'substantial

3  exculpatory evidence' to a grand jury." (citing <u>Williams</u>) (emphasis

4  added)).

5      However, the analysis does not stop there. Prior to assuming his

6  judicial duties, Judge Burns was a member of the United States

7  Attorney's Office, and made appearances in front of the federal grand

8  jury.[10/]  As such he was undoubtedly aware of the provisions in the

9  United States Attorneys' Manual ("USAM").[11/]  Specifically, it appears

10  he is aware of USAM Section 9-11.233 thereof which reads:

11          In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992),
        the Supreme Court held that the Federal courts' supervisory
12      powers over the grand jury did not include the power to
        make a rule allowing the dismissal of an otherwise valid
13      indictment where the prosecutor failed to introduce
        substantial exculpatory evidence to a grand jury. It is the
14      <u>policy</u> of the Department of Justice, however, that when a
        prosecutor conducting a grand jury inquiry is personally
15      aware of <u>substantial evidence that directly negates the
        guilt</u> of a subject of the investigation, the prosecutor
16      <u>must present or otherwise disclose</u> such evidence to the
        grand jury before seeking an indictment against such a
17      person. While a failure to follow the Department's policy
        should <u>not result in dismissal of an indictment</u>, appellate
18      courts <u>may refer violations of the policy to the Office of
        Professional Responsibility</u> for review.

19

20  (Emphasis added.)[12/]  This policy was reconfirmed in USAM 9-5.001,

21  Policy Regarding Disclosure of Exculpatory and Impeachment

22  _____

23      [10/]  He recalled those days when instructing the new grand
    jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

24      [11/]  The USAM is available on-line at
25  www.usdoj.gov/usao/eousa/foia_reading_room/ usam/index.html.

26      [12/]  <u>See</u>  www.usdoj.gov/usao/eousa/foia_reading_room/usam/
    title9/11mcrm.htm.  Even if Judge Burns did not know of this provision
    in the USAM while he was a member of the United States Attorney's
27  Office, because of the accessability of the USAM on the internet, as
    the District Judge overseeing the grand jury he certainly could
28  determine the required duties of the United States Attorneys appearing
    before the grand jury from that source.

Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates the guilt of a subject of the investigation</u>' to the grand jury before seeking an indictment, <u>see</u> USAM § 9-11.233 ." (Emphasis added.)[13]/

The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[14]/  If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there is some nefarious slant

---

[13]/    See  www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E".   See  www.usdoj.gov/usao/eousa/foia_reading _room/usam/title9/5mcrm.htm.

[14]/    Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily . . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[15/] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in <u>Navarro-Vargas</u> was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In <u>United States v. Isgro</u>, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing <u>Williams</u> established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require

_____

[15/] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," <u>Williams</u>, 504 U.S. at 51 (citing <u>United States v. Calandra</u>, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

07cr2981-LAB

1   dismissal of the indictment.  974 F.2d at 1096 ("_Williams_ clearly

2   rejects the idea that there exists a right to such 'fair' or

3   'objective' grand jury deliberations.").  That the USAM imposes a duty

4   on United States Attorneys to present "substantial" exculpatory

5   evidence to the grand jury is irrelevant since by its own terms the

6   USAM excludes defendants from reaping any benefits from the self-

7   imposed policy.[16/]  Therefore, while the "duty-bound" statement was an

8   interesting tidbit of information, it was  unnecessary in terms of

9   advising the grand jurors of their rights and responsibilities, and

10  does not cast an unconstitutional pall upon the instructions which

11  requires dismissal of the indictment in this case or any case.  The

12  grand jurors were repeatedly instructed by Judge Burns that, in

13  essence, the United Sates Attorneys are "good guys," which was

14  authorized by _Navarro-Vargas_.  408 F.3d at 1206-07 ("laudatory

15  comments . . . not vouching for the prosecutor").  But he also

16  repeatedly "remind[ed] the grand jury that it stands between the

17  government and the accused and is independent,"  which was also

18  required by _Navarro-Vargas_.  408 F.3d at 1207.  In this context the

19  unnecessary "duty-bound" statement does not mean the instructions were

20  constitutionally defective requiring dismissal of this indictment or

21  any indictment.

22      The "duty bound" statement constitutional contentions raised by

23  Defendant do not indicate that the "'structural protections of the

24  grand jury have been so compromised as to render the proceedings

25  fundamentally unfair, allowing the presumption of prejudice' to the

26  _____

27  [16/]    The apparent irony is that although an Assistant U.S.
    Attorney will not lose a case for failure to present exculpatory
    information to a grand jury per _Williams_, he or she could lose his or
28  her job with the United States Attorney's Office for such a failure
    per the USAM.

defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

D.    ANY LEAVE FOR DEFENDANT TO FILE FURTHER
      MOTIONS SHOULD BE STRICTLY LIMITED

While the government recognizes this court's discretion to permit defendant to file further motions, the Government does oppose defendant's motion to the extent it is conjectural, overly broad and invites abuse. Any need for further motions should be justified at the time they are filed, permitting both the Government to oppose on a motion-by-motion basis and this court to determine if such motions could in fact have been filed earlier. Any other course would invite an interminable and protracted motion practice, resulting in delay of trial.

E.    THE GOVERNMENT'S MOTION FOR RECIPROCAL
      DISCOVERY SHOULD BE GRANTED

      1.    Rule 16(b)

The defendant has invoked Federal Rule of Criminal Procedure 16(a) in his motion for discovery. In addition, the Government voluntarily will comply with the requirements of Federal Rule of Criminal Procedure 16(a). Thus, the 16(b) provision of that rule are operable as to defendant.

The Government, pursuant to Rule 16(b), hereby requests the defendant to permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects,

1  or make copies of portions thereof, which are within the possession,

2  custody or control of defendant and which he intends to introduce as

3  evidence in his case in chief at trial.

4      The Government further requests that it be permitted to inspect

5  and copy or photograph any results or reports of physical or mental

6  examinations and of scientific tests or experiments made in connection

7  with this case, which are in the possession or control of the

8  defendant, which he intends to introduce as evidence in chief at the

9  trial or which were prepared by a witness whom the defendant intends

10  to call as a witness.   The Government also requests that the Court

11  make such orders as it deems necessary under Rule 16(d)(1) and (2) to

12  ensure that the Government receives the discovery to which it is

13  entitled.

14          2.   <u>Rule 26.2</u>

15      Federal Rule of Criminal Procedure 26.2 requires the production

16  of prior statements of all witnesses except the defendant.   The Rule

17  thus provides for the reciprocal production of Jencks statements.   As

18  stated in pertinent part:

19          After a witness other than the defendant has testified on
           direct examination, the court, on motion of a party who did
20          not call the witness, shall order the attorney . . . to
           produce, for the examination and use of the moving party,
21          any statement of the witness that is in their possession .
           . . .

22

23  Fed. R. Crim. P. 26.2(a).

24      The time frame established by the Rule requires the statement to

25  be provided after the witness has testified, as in the Jencks Act.

26  Therefore, the Government hereby requests that defendant be ordered

27  to supply all prior statements of defense witnesses by a reasonable

28  date before trial to be set by the court.   This order should include

any form these statements are memorialized in including, but not limited to, tape recordings, handwritten or typed notes and reports.

III

<u>CONCLUSION</u>

For the foregoing reasons, the Government respectfully requests that defendant's motions be denied and the Government motions be granted.

DATED:  December 3, 2007.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

S/Steve Miller

STEVE MILLER
Assistant U.S. Attorney

UNITED STATES OF AMERICA

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,    )    Criminal Case No. 07cr2981-LAB
                             )
          Plaintiff,         )
                             )    CERTIFICATE OF SERVICE
v.                           )
                             )
RANDY JOE DELACRUZ,          )
                             )
          Defendant.         )
_____)

IT IS HEREBY CERTIFIED THAT:

I, Steve Miller, am a Citizen of the United States over the age of eighteen years and a resident of San Diego county, California.  My business address is 880 Front Street, San Diego, California 92101-8893.  I am not a party to the above-entitled action.  I have caused service of the Government's Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies them.

1.   Shaffy Moeel, Federal Defenders, shaffy_moeel@fd.org

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-EFC participants on this case n/a the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 3, 2007

                                   s/Steve Miller
                                   STEVE MILLER